**Entered on Docket**
**October 15, 2009**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: October 14, 2009**

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                            No. 09-43502 T
                                                 Chapter 11
MICHAEL H. CLEMENT CORPORATION,

    Debtor-in-Possession.
_____/

**MEMORANDUM OF DECISION**

The motion of Frank C. Alegre, Sr. and Helen C. Alegre as Trustees of the Frank C. Alegre and Helen C. Alegre Revocable Trust (hereinafter "Alegre") for an order deeming a nonresidential lease of real property rejected due to the debtor's failure to assume it within the time required by 11 U.S.C. § 365(d)(4) and for surrender of the leased premises came before the Court on October 5, 2009. Appearances were stated on the record. At the conclusion of the hearing, the Court took the motion under submission. The Court has now fully considered the evidence presented and the argument made. Its findings and conclusions are set forth below.

**SUMMARY OF FACTS**

The above-captioned debtor (the "Debtor") purchased certain real property located at 3500 Wilbur Avenue, Antioch, California (the

"Wilbur Avenue Property") in 1985. The Debtor is a licensed contractor and manufacturing company and operates its business on the Wilbur Avenue Property. Michael H. Clement ("Clement"), the president and sole shareholder of the Debtor, and his family also reside on the Wilbur Avenue Property.

On January 12, 2001, the Debtor entered into an agreement to sell the Wilbur Avenue Property to Alegre for $1.3 million (the "Sale Agreement"). Close of escrow was scheduled for October 31, 2001. As a pre-condition to the close of escrow, Clement was required to obtain certain entitlements for improvement of certain real property located on Holland Tract Road in Knightsen, California (the "Holland Tract Property"). Clement appears to have anticipated moving the Debtor's business operations to the Holland Tract Property when the improvements were completed. Clement failed to obtain the entitlements, and escrow did not close within the scheduled time.

The parties continued to negotiate and in 2003 entered into a second agreement, entitled Rental and Development Agreement (the "RDA"). The RDA recites that the Debtor and Clement will sell the Wilbur Avenue Property to Alegre through a two-way Internal Revenue Code Section 1031 exchange. (RDA, ¶(2)) Thereafter, the Debtor will have the option to continue to occupy the Wilbur Avenue Property rent free until thirty days after a certificate of occupancy has been issued for the Holland Tract Property or an equivalent facility. (RDA, ¶(5)) Alegre agrees to provide the funds to acquire and build out the Holland Tract Property up to $1.3 million. (RDA, ¶(8)(c)) Title to the Wilbur Avenue Property is to be taken in Alegre's name

2

pending completion of the Holland Tract Property project and 1031 exchange. (RDA, ¶(10))

The RDA further provides that, in the event Alegre does not complete the build out of the Holland Tract Property within two years, the Debtor will have the option of buying back the Wilbur Avenue Property for $1.3 million less the commission paid by the Debtor. (RDA, ¶(12)) Alegre agrees that, over and above the $1.3 million to be spent on the acquisition and build out of the Holland Tract Property, he will provide the Debtor and Clement with additional product and services with a value of $104,000.

In the event the Holland Tract Property project has not been completed within 15 months from the date of the RDA and the Debtor wishes to continue to occupy the Wilbur Avenue Property, this $104,000 obligation will be applied as a credit against rent, to be calculated at $5,000 per month for months 16 through 24 and at $7,000 per month thereafter. When the credit is exhausted, the Debtor may continue to occupy the space at a fair market value rent. (RDA, ¶(20))

The intended 1031 exchange was never accomplished. However, two days after the RDA was executed, the Debtor executed a deed transferring title to the Wilbur Avenue Property to Alegre, and the deed was recorded.[1] Alegre paid $1.3 million, less the commission,

---

[1] The Debtor contends that the sale of the Wilbur Avenue Property was never consummated and that it is still the owner of the property. This contention is untenable. The Court has been provided with a copy of the recorded deed transferring title to Alegre. In addition, the complaint filed by the Debtor, seeking to rescind the RDA, affirmatively alleges that sale escrow closed and

3

to or on behalf of the Debtor in connection with the transaction. At some point, the Debtor acquired title to the Holland Tract Property.[2] After executing the deed transferring title to Alegre, the Debtor remained on the Wilbur Avenue Property, making no out-of-pocket payment of rent. The $104,000 in rent credit was exhausted in or about May 2006. The Debtor has remained on the Wilbur Avenue Property since that time without paying rent.

In February 2006, the Debtor and Clement sued Alegre in state court, seeking, among other things, to rescind the sale of the Wilbur Avenue Property to Alegre. Trial was set for May 2009. The Debtor filed this bankruptcy case on April 28, 2009, presumably in the hope of delaying the trial. This effort was unsuccessful, the trial took place as scheduled, and judgment was rendered in July 2009 adversely to the Debtor. A copy of the Statement of Decision has been provided to the Court. In the Statement of Decision, the state court judge holds that the Debtor cannot rescind the sale because it is unable to repay Alegre for the approximately $1.3 million sale price. In August 2009 the Debtor filed a notice of appeal from the judgment, and that appeal is pending.

The chapter 11 case has been pending for 163 days, and the Debtor has not filed a motion to assume the lease of the Wilbur Avenue Property or moved to extend the time for doing so.

---

that Alegre is the owner of the Wilbur Avenue Property.

[2]The Debtor listed the Holland Tract Property as an asset on Schedule A of its Schedules of Assets and Liabilities.

4

## DISCUSSION

Alegre's argument is straightforward. He asserts that the lease provisions of the RDA give rise to a nonresidential lease of the Wilbur Avenue Property. Section 365(d)(4) of the Bankruptcy Code requires a chapter 11 trustee or debtor-in-possession to move to assume or reject such a lease within 120 days of the petition date. If the debtor-in-possession fails to act within the 120 days, the lease is deemed rejected, and the leased property must be surrendered to the landlord. More than 120 days have passed since the petition was filed commencing this case. The Debtor has failed to move to assume the lease. Therefore, the lease is deemed rejected, and the Debtor is required to vacate the Wilbur Avenue Property.[3] In any event, Alegre argues, the Debtor is not entitled to remain on the Wilbur Avenue Property without paying any rent.

The Debtor raises two arguments in opposition to the motion. First, it contends that the Wilbur Avenue Property is residential because Clement and his family live on the property. Therefore, it is not subject to the 120 day deadline for assumption or rejection. Second, it contends that, because the lease provisions are so entangled with other provisions in the RDA, even if the lease is

---

[3] Alegre notes that there are sublessees on the Wilbur Avenue Property. He asserts that the sublessees must also vacate the leased premises. He asserts that, under California law, sublessees have no greater right to possession than the lessee, citing <u>Syufy Enterprises, L.P. v. City of Oakland</u>, 104 Cal. App. 4th 869, 882-83, 887 (2002). The Debtor does not dispute these facts or this legal proposition.

5

nonresidential, it does not constitute a bona fide lease. The Court will address each argument in turn.

**A.  IS THE WILBUR AVENUE PROPERTY RESIDENTIAL OR NONRESIDENTIAL?**

It is undisputed that the Wilbur Avenue Property is located in a heavy industrial zone and cannot legally be used as a residence. It is also undisputed that the primary use of the Wilbur Avenue Property is commercial. Finally, it is also undisputed that Clement and his family live in trailers on the Wilbur Avenue Property in violation of the zoning law and have apparently done so for a lengthy period of time. The question is whether, given these undisputed facts, the Wilbur Avenue Property can fairly be characterized as residential. The Court concludes that it cannot be.

The Debtor cites the following bankruptcy court decisions for the proposition that real property is considered residential as long as people reside on it: In re Independence Village, Inc., 52 B.R. 715 (Bankr. E.D. Mich. 1985); Secretary of the Army v. Terrace Apts., Ltd., 107 B.R. 382 (Bankr. N.D. Ga. 1989); In re Care Givers, Inc., 113 B.R. 263 (Bankr. N.D. Tex. 1989); In re Lippman, 122 B.R. 206 (Bankr. S.D. N.Y. 1990); In re Bonita Glen II, 152 B.R. 751 (Bankr. S.D. Cal. 1993); In re Historical Locust St. Dev. Assocs., 246 B.R. 218 (Bankr. E.D. Penn. 2000). Alegre contends that these decisions are all factually distinguishable and that the case with facts more on point is Matter of Emory Properties, Ltd., 106 B.R. 318 (Bankr. N.D. Ga. 1989). The Court agrees.

Case: 09-43502   Doc# 80   Filed: 10/14/09   Entered: 10/15/09 12:46:31   Page 6 of 13

Independence Village involved the lease of a life-care facility for the elderly. 52 B.R. at 720-22.[4] Terrace Apts. involved the lease of low cost rental housing for military and civilian personnel and their families. 107 B.R. at 383-84. Care Givers involved six leases of nursing homes. 113 B.R. at 265-68. Lippman involved leases of three apartments in a cooperative apartment building, one of which the debtor and his daughter occupied, one of which was sublet, and one of which was vacant. 122 B.R. at 207. Bonita Glen II involved the lease of real property upon which an apartment building was to be built. 152 B.R. 752. Historical Locust Street Development involved the lease of real property to be used as a parking lot in conjunction with a building containing 16 residential units and four commercial units. 246 B.R. at 220.

The distinction between the facts in these decisions and the facts presented in the instant case is obvious. With the exception of Historical Locust Street Development, it was the clear intent of the leases that people would reside on the real property in question. However, even Historical Locust Street Development does not supply persuasive authority for finding the lease in this case residential as the decision was not based on the fact that people resided on the parking lot property.

By contrast, the facts in Emory Properties are much closer to those presented here. In that case, the debtor operated a

---

[4] However, as discussed below, the agreement was found to be an equitable mortgage rather than a lease. Therefore, the finding that the real property was residential was dicta.

7

nonresidential hotel on the leased premises. The debtor argued that the lease was residential because a few of the hotel employees lived on the leased premises. The Emory Properties court rejected this contention. 106 B.R. at 320. Based on the authorities cited above, the Court is not persuaded that the Wilbur Avenue Property can be fairly characterized as residential simply because Clement and his family live on it. Thus, the lease will be deemed rejected and must be surrendered immediately unless the Court determines that it is not a bona fide lease.

**B. DOES THE RDA GIVE RISE TO A BONA FIDE LEASE?**

As noted above, the Debtor also contends that the RDA does not give rise to a bona fide lease as contemplated by 11 U.S.C. § 365(d)(3) and (4). It asserts that the provisions in the RDA for the payment of rent are too intertwined with the other provisions of the RDA for the lease provisions to qualify as a bona fide lease. In support of this proposition, the Debtor relies primarily on In re Moreggia & Sons, Inc., 852 F.2d 1179 (9th Cir. 1988).

Moreggia involved the lease of two store units in the San Francisco Produce Terminal by a seller of produce displaced by a redevelopment project. The lease was for a total of 50 years, including options. The lease term and rental rate was calculated by the amount necessary to pay off the public bonds issued to finance the construction of the Terminal. At the end of the 50 years, the obligation to pay rent ceased. The chapter 7 trustee failed to assume the lease within the deadline but later attempted to assume

8

and assign it to a third party. The lessor contended that the lease was deemed rejected. The court disagreed.

The Moreggia court agreed with the lessor that the lease qualified as a lease under state law. However, it concluded that not every lease was subject to the automatic rejection provisions of 11 U.S.C. § 365(d)(4). It quoted a passage from the Senate Report to 11 U.S.C. § 506(b)(6), stating that references to leases of real property applied only to bona fide leases and not to financing leases. Id. at 1182. In support of this conclusion, it cited In re Independence Village, 52 B.R. 715 (Bankr. E.D. Mich. 1985) and In re PCH Associates, 804 F.2d 193 (2nd Cir. 1986).[5]

The Moreggia court concluded that the lease in question was the product of "unique circumstances" and that no true landlord/tenant relationship was ever intended or created. Therefore, the trustee was not subject to the statutory deadlines for assumption set forth in 11 U.S.C. § 365(d)(4). The court also found that the purposes of § 365(d)(4) would not be served by applying its provisions to a transaction of this sort. The court cited legislative history, indicating that the statute had been enacted because of the concern of Congress about the effect of tenant bankruptcies on shopping

---

[5]The facts of Independence Village have been discussed in the preceding section. PCH Associates involved a complex financing scheme whereby the debtor, which owned a hotel in Philadelphia and the land upon which the hotel sat, sold the land (but not the hotel) and leased it back in order to raise funds to renovate the hotel and to provide working capital. 852 F.2d at 1183. The PCH Associates court held that the lease was not a bona fide lease for purposes of the Bankruptcy Code. 804 F.2d at 198-99.

9

centers. Finally, the Moreggia court found that equitable considerations argued against forfeiture of the debtor's interest in the property in question.

In a more recent case, however, the Ninth Circuit rejected the "unique circumstances" argument. See In re George, 177 F.3d 885 (9th Cir. 1999). In that case, in 1987, the debtors entered into an agreement with the City of Morro Bay for the lease of waterfront property for a term of 30 years. The agreement required the debtors, at their own expense, to construct and maintain pierage, docks, quays, and restrooms for the benefit of the public. The debtors also constructed commercial buildings for their own benefit. In 1994, the debtors filed for chapter 11. When they failed to assume the lease within the time required by 11 U.S.C. § 365(d)(4), the City filed a motion for surrender of the property on the theory that the lease should be deemed rejected.

In response, among other things, the debtors argued that the lease was not a bona fide lease, relying on Moreggia. The George court found the facts of the case before it distinguishable from those in Moreggia. The court found it significant that the rent that the debtors were required to pay to the City of Morro Bay was tied to the fair market value of the property, not to financing requirements for the development of the property.

The facts presented here fall somewhere in between those presented in Moreggia and those presented in George. Clearly, the RDA is not a financing lease. The rent to be paid was not tied to the funds necessary acquire or develop the Wilbur Avenue Property.

10

To the contrary, the RDA states that, after a specified period of time, if the Debtor wishes to remain on the Wilbur Avenue Property, the parties must agree on a fair market rate rent.

On the other hand, there is no fixed term for the lease. Additionally, unlike any of the debtors in the cases which found the leases to be subject to 11 U.S.C. § 365(d)(4), the Debtor owned the Wilbur Avenue Property for many years before executing the RDA. The RDA provisions give the Debtor the right to reacquire the Property provided the sale price can be refunded. In any event, the Debtor has the right to remain on the Property, apparently forever, provided it can pay Alegre a fair rental rate.

In sum, although the question is a close one, the Court concludes that the lease provisions of the RDA do not give rise to a bona fide lease that is subject to the deadline for assumption or rejection set forth in 11 U.S.C. § 365(d)(4). Therefore, the motion for an order deeming the lease provisions of the RDA rejected and for surrender of the Property will be denied.

However, the Court agrees with Alegre that the Debtor may not continue to occupy the Property rent free. The Court directs the parties to meet and confer within the next two weeks to attempt to agree on a fair rental rate. In the event the parties cannot agree, Alegre is directed to file a motion for the determination of an appropriate rental rate with supporting evidence. Once the rate is determined, the debtor will be required to pay the rent on a current basis in order to remain on the property. Counsel for Alegre is

11

directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

12

COURT SERVICE LIST

James A. Tiemstra
Law Offices of James A. Tiemstra
Tribune Tower
409 13th St. 15th Fl
Oakland, CA 94612

Jermeny W. Katz
Pinnacle Law Group
425 California St., Ste. 1800
San Francisco, CA 94104

Steven B. Piser
Law Offices of Steven B. Piser
499 Fourteenth St., Ste. 210
Oakland, CA 94612