Signed: May 03, 2010



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                       No. 09-43502 T
                                            Chapter 11
MICHAEL H. CLEMENT CORPORATION,

    Debtor-in-Possession.
_____/

**MEMORANDUM OF DECISION RE FEE APPLICATION**

On December 16, 2009, Samuel E. Goldstein & Associates ("Goldstein"), special counsel for the above-captioned debtor (the "Debtor"), filed an application requesting interim allowance and payment of fees and costs incurred post-petition. An amended application (the "Amended Application") was filed on February 11, 2010. Both the original application and the Amended Application were opposed by Frank C. Alegre, Sr. and Helen C. Alegre as Trustees of the Frank C. Alegre and Helen C. Alegre Revocable Trust (hereinafter "Alegre"). The Amended Application came on for hearing on March 15, 2010. At the Court's directions, the parties filed post-hearing briefs. The Court's findings and conclusions are set forth below.

**BACKGROUND**

The above-captioned chapter 11 case was filed on April 28, 2009, shortly before a scheduled trial in a state court action involving the Debtor and Alegre. The state court action had been initiated jointly by the Debtor and its principal, Michael Clement ("Clement"). Upon filing for bankruptcy, the Debtor removed the state court action to the bankruptcy court. Because the Debtor was the plaintiff, its prosecution was not subject to the automatic stay.

The Court approved Goldstein's employment by the Debtor as special counsel in the state court action on May 19, 2009. Prior to that date, on May 7, 2009, Alegre moved for remand of the state court action. The Court granted the motion, and the action was tried in state court. Judgment was entered against the Debtor on or about July 10, 2009. The judgment gave Alegre the right to recover his reasonable attorneys' fees and costs from the Debtor and Clement, the amounts of the fees and costs to be determined at a later date. The judgment is currently on appeal. Goldstein does not represent the Debtor in the appeal.

Goldstein filed his original fee application on December 16, 2009 and scheduled it for hearing on January 19, 2010. Alegre filed an opposition to the application on January 12, 2010. Goldstein filed a reply on January 18, 2010. At the hearing, the Court denied the application without prejudice due to improper service and formatting problems without addressing Alegre's objections.

The Amended Application was filed on February 11, 2010. Alegre filed a renewed opposition to the Amended Application on March 8,

2

2010. Goldstein filed a renewed reply. A hearing was conducted on the Amended Application on March 15, 2010. At the hearing, counsel for Alegre asserted objections with a specificity not included in its opposition. The Court directed Alegre to put these objections in writing. It set a briefing schedule so that the Debtor would have an opportunity to respond and Alegre would have an opportunity to reply. The parties complied with the briefing schedule.

**DISCUSSION**

**1. Original and Amended Applications, Objections, and March 15, 2010 Hearing**

In the original application, Goldstein sought allowance and payment of fees totaling $103,187.50 and costs totaling $6,998.10 for services provided and costs incurred between April 28, 2009 and October 27, 2009. In the Amended Application, Goldstein sought allowance and payment of fees totaling $124,248 and costs totaling $3,056.14 for services provided and costs incurred between April 28, 2009 and January 26, 2010. The fees requested in the Amended Application reflected 517 hours of services. The Application disclosed that Goldstein had received $235,000 from the Debtor pre-petition for services provided and costs incurred pre-petition and that he had an unpaid claim for pre-petition services and costs totaling $168,908.12.

The Amended Application contained a narrative summary of the work performed post-petition, broken into projects as required by the Court's guidelines. The Amended Application was supported by a declaration to which was attached a line-by-line breakdown of the

3

services performed and costs incurred. The description of the services performed was broken into the projects described in the narrative summary.

On January 12, 2010, Alegre filed a detailed objection to the original application. First, he contended that the application was premature. Alegre reminded the Court that the state court action had resulted in a judgment adverse to the Debtor. Although that judgment was on appeal, Alegre contended that, until the appeal had been decided, it was premature to determine whether Goldstein's services were reasonably likely to benefit the bankruptcy estate as required by 11 U.S.C. § 330.

More specifically, Alegre objected to the $28,2795.50 in fees and costs requested by Goldstein for services in connection with Alegre's post-judgment motion for fees and costs. Alegre contended that this motion had only been asserted against Clement and that the automatic stay prevented him from asserting it against the Debtor. Thus, the services provided by Goldstein in this category were for the benefit of Clement only. In particular, Alegre objected to the fees requested by Goldstein for attempting to obtain a statement of decision with regard to the fee motion from the state court judge. Alegre noted that the state court judge had characterized the request as "borderline frivolous."

Alegre also objected to: (1) $7,677.50 in fees requested for services for which the time allocations were "clumped": i.e., more than one task was described with no breakdown of the time spent on each task, (2) $3,687.50 in fees requested for services that were

4

inadequately described, and (3) $5,943 in fees requested for services for which the descriptions contained redactions. The line items in question were identified in the objection. In sum, the specific objections related to fees totaling $45,586.50.

In his reply to the original application, Goldstein contended that none of the services he provided were solely for the benefit of Clement personally. He noted that Alegre was seeking $1,000,000 in attorneys' fees and $50,000 in costs. The judgment stated that the Debtor and Clement were jointly and severally liable for these fees and costs. Moreover, Clement's liability for these fees and costs would have a substantial effect on Clement's ability to contribute to the Debtor's reorganization effort. In addition, Goldstein contended he had requested a statement of decision on the advice of the Debtor's appellate counsel because at least one published appellate decision had based its adverse ruling on the absence of a statement of decision.

Goldstein also disputed Alegre's contention that he was only entitled to fees and costs if his services actually conferred a benefit on the estate: i.e., if the appeal from the adverse state court judgment was successful. He noted that the law is clear that reasonableness is determined at the time the services are performed and costs incurred, not in hindsight at the end of the litigation. See 11 U.S.C. § 330(a)(3)(A)&(C); In re Mednet, 251 B.R. 103, 108 (Bankr. 9th Cir. 2000); In re Circle K Corp., 294 B.R. 111, 125 (Bankr. D. Ariz. 2003). Thus, his fee application was not premature.

5

Finally, Goldstein characterized as nit-picking Alegre's objections to certain time entries on the ground that the descriptions of services were "clumped," the services were inadequately described, or the descriptions contained redactions. He contended that any "clumped" items set forth work on a single topic, the descriptions were adequate if viewed in context, and the redactions were necessary to protect privileged content.

After the Application was filed, on March 8, 2010, Alegre filed a supplemental opposition. The supplemental opposition reiterated briefly Alegre's contentions in the original opposition.[1] On March 12, 2010, Goldstein filed a supplemental reply. Goldstein asserted that, by reiterating his previous objections, Alegre revealed that he had not really reviewed the Application. Goldstein contended that, in the Application, he had taken extreme care to comply with the Court's guidelines as to the description of services and separate listing of discrete tasks. In addition, he had eliminated virtually all of the redactions.

At the March 15, 2010 hearing, Alegre asserted that none of the costs incurred after July 10, 2009, the date of the adverse judgment, were incurred for the benefit of the bankruptcy estate and should be disallowed. He also made a series of objections to different categories of services, citing to the page numbers of the time entries. Given the number and specificity of these objections, the

---

[1] The only additional objection raised by the objection filed on March 8, 2010 was to a January 19, 2010 time entry representing $72 in fees. Goldstein has conceded that this fee should be disallowed.

6

Court ordered Alegre to put them in writing. A briefing schedule was established for him to do so, and deadlines were set for the filing of Goldstein's response and Alegre's reply.

**2. Post-Hearing Briefs**

    **A. Alegre's Post Hearing Opposition**

In his opening post-hearing brief, Alegre asserted that his objections to Goldstein's fee application fell into three categories: (1) fees for services that were not reasonably incurred, (2) fees for services performed for Clement personally as opposed to the Debtor, and (3) costs for services rendered after the judgment was entered and thus incurred for Clement's benefit rather than the Debtor's. These are discussed in more detail below.

    **(1) Fees for Services Not Reasonably Incurred**

The fees for services that Alegre contended were not reasonably incurred by Goldstein totaled $5,992.50. Of this amount, $4,768.50 represented work done on the appeal from an order imposing sanctions against the Debtor and Clement due to discovery abuses, and $1,224 represented work done correcting the deficiencies in Goldstein's original fee application.

Alegre made several points with regard to his objection to the fees requested for work done on the appeal from the sanction order. First, he noted that the appeal was brought by both the Debtor and Clement. Thus, at a minimum, the fees should be apportioned between the two. Second, the work was not performed for the Debtor's benefit, because the sanction award could not be enforced against the Debtor due to the automatic stay. Third, one of the judges on the

7

appellate panel essentially characterized the appeal as frivolous. Finally, all but $1,192 was incurred after the appeal was decided, in an attempt to have the appellate decision de-published. Alegre contended that this work was not done for the benefit of the Debtor.

With respect to the work done correcting the deficiencies in Goldstein's original fee application, Alegre's primary objection was that Goldstein should not be compensated for correcting his own mistakes. Moreover, he contended that the fees requested in this category should be reduced due to Goldstein's "overreaching": i.e.,. his attempt to hold the estate liable for fees not incurred on the Debtor's behalf, or at least not reasonably so.

**(2) Fees for Services Performed Only for Clement**

Alegre contended that $30,584 of the fees were for services that were performed only for Clement's benefit. These services included work done in connection with discovery issues, two motions for fees filed by Alegre, Alegre's motion to require Clement to file an undertaking to stay execution of the judgment, and Clement's motion to strike Alegre's motion to tax costs.

Alegre noted that $4,184 of the fees were described as having been incurred for discovery matters. Alegre contended that $2,222 of these fees were incurred taking the deposition of Alegre's trial counsel, Steven Piser ("Piser"). He contended further that the deposition was conducted in connection with Clement's opposition to Alegre's motion for attorneys' fees and thus only benefitted Clement. Alegre did not explain why the balance of the fees requested in this category should be disallowed.

8

For the same reason, Alegre objected to the fees requested for work done in connection with the two fee motions: i.e., $8,461.50 and $6,019, respectively. These motions were asserted only against Clement, not the Debtor, and only Clement, not the Debtor, objected to the motions.

For the same reason, Alegre objected to the $11,312.50 in fees requested for opposing Alegre's motion to require an undertaking as a condition of staying enforcement of the judgment pending appeal. Due to the automatic stay, the judgment could not have been enforced against the Debtor. Thus, the motion only affected Clement, and Goldstein's services were only for Clement.

Again for the same reason, Alegre objected to $6,626 in fees requested for filing an opposition to Alegre's bill of costs after trial. Because of the automatic stay, according to Alegre, the cost bill could not be "assessed" against the Debtor. He contended that, on August 31, 2009, he filed a document with the state court, clarifying that the bill of costs was only directed against Clement.

**(3) Costs Incurred Only for Clement's Benefit**

Finally, Alegre contended that Goldstein was requesting reimbursement of $2,187.50 in costs incurred after entry of the judgment on July 10, 2009. After that date, he contended, there were no proceedings pending against the Debtor. Thus, the costs could only have been incurred for Clement's benefit. For example, some of the costs were presumably incurred in connection with Alegre's post-judgment motion to tax costs. Due to the automatic stay, this motion was only asserted against Clement.

9

## B. Goldstein's Post-Hearing Brief

In his response to Alegre's post-hearing opening brief, Goldstein noted that, at the March 15, 2010 hearing, Alegre had contended that approximately 80 percent of his requested fees and costs should be disallowed. He noted that, in his post-hearing brief, Alegre has stated grounds for disallowing only approximately $38,000 of Goldstein's fees and costs.

Goldstein noted that Alegre's primary objection was that the services giving rise to the fees were performed only for Clement's benefit, not for the Debtor's. However, Goldstein noted, prior to the trial, Clement had assigned his interest in the litigation to the Debtor. Thus, all of the services he performed were for the Debtor's benefit. Goldstein contended that the state court judge had been advised of the assignment and should not have permitted Clement to be named in the judgment. Moreover, even if the judgment cannot be enforced against the Debtor at present, the Debtor will ultimately be liable for those fees and costs since the judgment held the Debtor and Clement jointly and severally liable.

Goldstein asserted that the $5,992.50 in fees incurred in connection with the appeal from the sanction award and to amend the original fee application were reasonably incurred. He conceded that one of the appellate judges on the sanction appeal expressed the opinion that the appeal was unreasonable. However, Goldstein respectfully disagreed with that statement. Goldstein also asserted that it was reasonable to attempt to have the appellate decision de-published and that these services were performed for the Debtor's

10

benefit. Finally, the $1,244 in fees incurred to prepare the Amended Application were not just incurred to correct deficiencies in the original application. Additional work was required because the Amended Application covered an additional time period. Goldstein noted that the amount he was requesting was within the Court's guideline limit of five percent of the total application amount.

Goldstein also disagreed with Alegre's contention that $32,771.50 of the fees and costs requested were incurred solely for Clement's benefit. He conceded that the services performed that gave rise to these fees were performed in connection with matters that, on their faces, were only directed against Clement. However, he contended that the services were nevertheless necessary for several reasons.

First, based on the language of the judgment, the Debtor was jointly and severally liable for any fees and costs assessed. Second, Alegre's motion for fees and costs was originally asserted against both Clement and the Debtor. Third, since Clement had assigned his interest in the action to the Debtor, Clement was no longer really a party to the state court action. As a result, the services were performed only for the Debtor's benefit. Third, Clement was the Debtor's principal whom the Debtor is bound to indemnify.

### C. Alegre's Post-Hearing Reply

In reply, Alegre took issue with Goldstein's assertion that the judgment held the Debtor and Clement jointly and severally liable for Alegre's fees and costs. He quoted the language of the judgment and

11

attached a copy of it to the declaration executed by Piser. Similarly, he quoted from the language of the fee order, noting that it named only Clement, not the Debtor. A copy of the fee order is also attached to Piser's declaration. Alegre also asserted that the cost bill was not directed against the Debtor. However, no copy of the cost bill was attached to Piser's declaration.

Alegre noted that Goldstein did not dispute that the motion to require an undertaking only pertained to Clement. He disparaged Goldstein's argument that enforcement of the judgment against Clement would have interfered with the bankruptcy case. Moreover, he argued that, if this were so, relief should have been sought from the bankruptcy court.

Alegre characterized as frivolous Goldstein's contention that Clement's assignment to the Debtor of his interest in the litigation rendered the Debtor the only remaining target of the post-trial motions. First, he noted that Goldstein attached only a portion of the transcript of the state court hearing in support of this argument. He provided an additional portion of the transcript, evidencing Goldstein's insistence that Clement be retained as a "nominal" party in the case.[2] Moreover, he noted that state law did not permit an obligee to eliminate his liability to an obligor by assigning it to a third party without the obligor's consent. In support of this contention, Alegre cited Cal. Civ. Code § 1457,

---

[2]Goldstein filed an objection to Alegre's submission of new evidence to the Court in his reply, characterizing it as "sandbagging."

12

Britschgi v. McCall, 41 Cal. 2d 138, 144 (1953) and Baer v. Associated Life Ins. Co., 202 Cal. App. 3d 117, 124 (1988).

Finally, Alegre contended that the fees requested for work in connection with the appeal of the sanction order was unreasonable. First, approximately $5,000 of the fees requested was for work performed long after the briefing process was complete. Second, a substantial portion of the fees requested related to the attempt to have the appellate decision de-published.

**3. Decision**

    **A. Was Application Premature?**

As noted above, in his objection to the original application and the Amended Application, Alegre raised a blanket objection to the fee application on the ground that it was premature: i.e., that the reasonableness of the fees and costs could only be determined after the appeal had been decided. This objection was not reiterated in the post-hearing briefs and may have been abandoned. If not, however, the Court overrules it. Such a position would require any debtor wishing to appeal an adverse judgment to obtain counsel on a contingency fee basis. This might not always be possible. When an appeal was nevertheless meritorious, the debtor's inability to obtain counsel would result in a windfall to the appellee. Moreover, the services provided here were not really in connection with the appeal. Rather, they were post-trial matters directly connected to the judgment.

**B. Were Fees Reasonably Incurred?**

In the post-hearing brief, as noted above, Alegre objected to $5,992.50 of the fees as not reasonably incurred: (1) $4,768.50 incurred in connection with the appeal from the sanction order, all but $1,192 of which was incurred in an effort to prevent publication of the appellate opinion, and (2) $1,224 to correct deficiencies in the original fee application. The Court has considered the arguments of the parties with respect to these fees. It concludes that the attempt to prevent publication of the appellate opinion was not reasonably for the benefit of the estate. In the Court's view, these services were primarily incurred for Goldstein's benefit. Thus, the $4,768.50 in fees requested for this effort will be disallowed.

The Court finds that the additional $1,192 in fees for the appeal of the sanction order were reasonably incurred for the benefit of the estate. The comment by one of the appellate judges at the hearing on the appeal is insufficient to persuade the Court otherwise. However, these services were also incurred for the Clement's benefit, and the estate should only be charged with half of the fees or $596. Thus, the fees sought by Goldstein in this category will be reduced by $5,396.50 ($5,992.50 less $596).

The Court will also allow only half of the remaining $1,192 in fees incurred correcting the deficiencies in the original fee application. Alegre is correct that the estate should not be charged for the correction of errors. However, Goldstein is correct that the Amended Application required additional work since it covered an

14

extended time frame. As a result, $546 of this portion of the fees requested will be allowed, and an equal amount will be disallowed.

**C. Were Fees Incurred Solely for the Benefit of Clement?**

In the post-hearing brief, Alegre also objected to various categories of services provided by Goldstein as having been incurred only for the benefit of Clement: (1) post-judgment discovery, (2) oppositions to two motions for fees, (3) opposition to Alegre's motion to require an undertaking as a condition of a stay of execution, and (4) opposition to motion to tax costs. Alegre noted that all of this post-judgment activity was directed solely against Clement as he believed that the automatic stay prevented him from proceeding any further against the Debtor.

Goldstein made a series of arguments as to why these activities implicated the Debtor as well as Clement, and in some respects only the Debtor. The Court found none of his arguments persuasive.[3] As a result, all of the fees incurred in these categories will be disallowed as a claim against the estate. The fees in this category totaled $30,584.

**D. Formatting Issues**

Alegre's objections to the original and Amended Applications also raised issues concerning the format of the applications. Alegre

---

[3] Goldstein objected to Alegre attaching evidence in support of his reply brief, characterizing it as "sandbagging." This objection is overruled. The evidence was provided to refute inaccurate contentions made by Goldstein in his response to Alegre's post-hearing brief. Goldstein does not challenge the authenticity of the evidence provided--i.e., a portion of a transcript from a state court hearing and a copy of the judgment.

15

contended that, with respect to the original application, $7,677.50 in fees were requested for services for which the time allocations were "clumped," $3,687.50 in fees were requested for services which were inadequately described, and $5,943 in fees were requested for services the descriptions of which contained redactions. In his subsequent objection, Alegre contended that the Amended Application contained the same problems as the original application. Goldstein responded that Alegre had obviously not reviewed the Amended Application carefully because he had removed the redactions. Goldstein contended that the other descriptions objected to had either been revised or were adequate.

The Court has reviewed the time entries attached to both the original application and the Amended Application. The Court agrees with Goldstein that the redactions have been eliminated. As a result, this objection is overruled. The other two objections are also overruled. The Court finds the descriptions of the services provided to be sufficient and any clumping to be negligible. Therefore, no further reduction in the fees requested will be required.

**E. Cost Request**

Finally, Alegre objected to the $2,187.50 in costs incurred after the judgment was entered. Goldstein made no coherent response to this objection. Thus, the costs requested will be reduced by this amount.

**CONCLUSION**

As noted above, in the Amended Application, Goldstein sought allowance and payment of fees totaling $124,248 and costs totaling $3,056.14 for services provided and costs incurred between April 28, 2009 and January 26, 2010. The Court concludes that of these amounts, the following reductions should be applied: $5,396.50 for work done on the appeal of the sanctions order, $546 for work done correcting the original fee application, and $30,584 for services incurred only for Clement's benefit. Thus, a total of $36,526.50 of the fees requested will be disallowed, and $87,721.50 in fees will be allowed on an interim basis. The cost reimbursement request of $3,056.14 should be reduced by $2,187.50, resulting in allowance of costs on an interim basis in the amount of $868.64. Goldstein is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

James A. Tiemstra
Law Offices of James A. Tiemstra
Tribune Tower
409 13th St. 15th Fl
Oakland, CA 94612

Jermeny W. Katz
Pinnacle Law Group
425 California St., Ste. 1800
San Francisco, CA 94104

Steven B. Piser
Law Offices of Steven B. Piser
499 Fourteenth St., Ste. 210
Oakland, CA 94612